## STATE V. MONTGOMERY.

1. An information charging that one stole four black hogs (describing them), "the personal property then and there being of one S.," contains a sufficient allegation of the ownership of the property.

2. Where one testified that he knew the value of hogs at the time in question, and that he had seen similar hogs sold on the market, and bought others, his testimony as to the value of hogs which he had seen and lifted was admissible.

3. Where an information charged the stealing of four black hogs, with white spots, and the evidence showed two answering that description— one black, with scattered white hairs, and the fourth all black—it was proper to refuse a charge that the accused cannot be found guilty of stealing more than two hogs, and to charge instead that, if the jury find that any of the hogs do not answer the description, the degree of the crime is fixed by the value of those that do.

4. Where an information charged the stealing of four hogs, and the evidence showed their value to be from $12 to $15 each, a conviction of grand larceny is sustained, under Rev. Pen. Code § 608, defining grand larceny as larceny of property of the value of more than $20, though only two of the hogs answered the description of the indictment.

5. Under a descriptive allegation in an information that sows were heavy with pig, testimony that they were pregnant and "about half gone" was sufficient to go to the jury on the question of identification of the stolen property.

(Opinion filed Dec. 29, 1903.)

Error to circuit court, Clay county; Hon E. G. SMITH, Judge.

Sam J. Montgomery was convicted of grand larceny and brings error. Affirmed.

*T. E. Price* for plaintiff in error.

*Philo Hall*, Attorney General, for defendant in error.

FULLER, J.    Plaintiff in error was tried and found guilty of grand larceny under an information charging that "Sam J. Montgomery did unlawfully and feloniously take, steal, and carry away, by fraud and stealth, four black hogs, having some white spots, being brood sows, heavy with pig, weighing about two hundred pounds each, and of the value of ten dollars each, all being of the value of forty dollars, the personal property then and there being of one Samuel Montgomery, with the intent then and there unlawfully and feloniously to deprive the said Samuel Montgomery thereof." On the ground that facts sufficient to constitute a public offense are not stated, because the ownership of the above described property is not alleged, a demurrer was interposed to the foregoing information, and the action of the trial court in overruling the same is assigned as error.   That in all other respects the information is clearly within the requirements of section 229 of the Revised Code of Criminal Procedure is conceded by counsel for the accused, and the words used by the pleader relative to the ownership of the property, though not elegantly combined, seem amply sufficient to enable a person of common understanding to know that the subject of the alleged larceny was then and there the personal property of one Samuel Montgomery, from the possession of whom it was taken by the accused

in the manner set forth, "with the intent then and there unlawfully and feloniously to deprive the said Samuel Montgomery thereof." Granting that ownership must be alleged in a manner showing that the accused is not charged with stealing his own property, but that of another, the expression, "the personal property then and there being of one Samuel Montgomery," when considered in its relation to other parts of the sentence in which it is found, conveys no other idea than that the property described as the subject of larceny belonged to and was owned by Samuel Montgomery; and the information is sufficient, in every particular, "to enable the court to pronounce judgment upon a conviction, according to the right of the case." Section 229, supra.

After testifying on behalf of the state that he knew the fair market value of brood sows and other hogs at that time and in that vicinity, Sam Arntz, the officer who made the arrest, and assisted in loading the stolen property into a wagon for the purpose of returning the same to its owner, was allowed to testify that, in his opinion, the fair market value of the hogs in question was about $15 apiece. To the question, when propounded, counsel for the accused objected on the ground that no foundation had been laid, the qualification of the witness to testify in relation to the matter not being shown; and the overruling of such objection is assigned as error. Knowledge of what hogs are worth at a specified time and place does not usually depend upon special experience; and any person possessing ordinary powers of observation, and showing some means of knowledge as to condition, quality, and price, may, in the exercise of judicial discretion, testify as to value, subject to the test of cross-examination concerning accuracy and

source of information.    The qualification of this witness to state his opinion as to the value of the property was further developed by his testimony on cross-examination as follows: "I base my testimony that I think these hogs were worth fifteen dollars apiece on brood sows, and the price of hogs, and the weight.    I should say they weighed two hundred and fifty or over, average.    I saw brood sows of that kind sold in that vicinity about that time in the market at Wakonda.    I bought hogs there for Wright at the time.    He and I were in the meat business together, and I used to weigh hogs for him. We were buying brood sows if they brought them in.    If they had them, we would buy them.    We did not buy brood sows heavy with pig, and these were not heavy with pig.    I am positive they were not heavy with pig.    I can tell by their making bag.    I know these sows were not heavy with pig. They were not very far along."    It cannot be determined from the record as presented that the trial court was not justified in its conclusions that the foundation was sufficient to admit the testimony for what it was worth in the estimation of the jury. Gleckler v. Slavens, 5 S. D. 364, 59 N. W. 323; Johnson v. Gilmore, 6 S. D. 276, 60 N. W. 1070; Frye v. Ferguson, 6 S. D. 392, 61 N. W. 161.    Concerning the subject, another witness, who assisted in loading the hogs, and had some knowledge of their weight and market value, testified without objection that the fair market value of these brood sows at that time and place was from $12 to $15 apiece.

The prosecuting witness, who had always taken care of the hogs in question, testified, as to their identity, in substance as follows:    "On Monday night, June 3, 1901, I lost four hogs or sows.    They were in good condition.    They were about half

gone, I suppose. There was two of them with some white spots, and one black one, and one black, with some white hairs —a few white hairs through her. I suppose they would weigh about two hundred or one hundred and a half. Of course, I did not weigh them, but I can guess that. These hogs were taken Monday night, and I did not see them until Wednesday morning. I saw them Monday night in the hoghouse, I suppose between ten and eleven o'clock. They were gone the next morning. * * * I next saw the hogs on Wednesday morning. I got them at the little house or stable northeast of my place about two and one-half miles. I got the hogs from that place or barn. They were my hogs, and were the same hogs that had been taken from my place Monday night. * * * I did not consent that the defendant or any one else should take these hogs out of that barnyard, and I did not know they were going to be taken. The hogs I got back on Wednesday morning were the identical hogs that had been taken from my place. I hauled them back in a wagon." Cross-examination: "I raised the hogs myself. I have been engaged in the hog business about thirty years. I fed these hogs three times a day, and of course was with them more or less. I had to water them three times a day and feed them. During the thirty years I have sold some hogs, and, of course, sold hogs at the market price. Two of these hogs were black, with white spots. One was all black, and the other one had some white scattering hairs through the black. I raised that one also. It was not always that color, until it had the cholera. It got that way after it had the cholera. It was originally a black hog, and had no white spots."

The following instruction was requested by counsel for the

accused, and its refusal is assigned as error: "I instruct you that the undisputed evidence in this case shows that only two of the hogs alleged to be stolen were black, having some white spots, as described in the information as the property of Samuel Montgomery; and, as a matter of law, I instruct you that, if you find the defendant guilty, you cannot find him guilty of the larceny of more than the two hogs so identified as being black, having some white spots." In view of the fact that two of the hogs were black, having some white spots, and another was the same color, with scattering white hairs mixed through the black, the following instruction given by the court is within the law, and the offered instruction was properly refused: "I further instruct you that, if you find from the evidence that any of the hogs alleged to be stolen do not answer the description given in the information, then and in that case, if you find the defendant guilty, you will ascertain from the evidence the value of the hogs, only, that do answer the description stated in the information, in fixing the degree of the crime." It being clearly shown that black is the prevailing color of these four brood sows, two of which exactly conform to the description given in the information, and were alone of sufficient value to sustain the charge of grand larceny, there was no error in giving or refusing instructions.

It stands proved, and is conceded by the instruction offered and refused, that "two of the hogs alleged to be stolen were black, having some white spots, as described in the information as the property of Samuel Montgomery," and the evidence plainly shows that their value exceeds $20. It follows, therefore, that a conviction of the crime charged in the information was fully authorized by section 608 of the Revised

Penal Code, although the testimony as to the other two sows be considered at variance with the description contained in the information.    State v. Wright, 15 S. D. 628, 91 N. W. 311.

The descriptive allegation that the sows were "heavy with pig" being a matter of opinion, concerning which ordinary witnesses would be most likely to differ, the testimony that the sows were pregnant and "about half gone" was sufficient to go to the jury, with all the other facts and circumstances tending to show that the property stolen was the property described in the information.    It would be unwarranted by the evidence, and merely speculative, to say that the jury was not justified in finding the sows to be heavy with pig, and each worth from $12 to $15.

Finding no error of law, and that evidence sufficient to justify the verdict was submitted to the jury under instructions most favorable to the accused, the judgment of the trial court is affirmed.